IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |  | |
|---|---|---|---|
| JESSICA RICH, | * | | |
| Plaintiff | * | | |
| v. | * | Civil Action  SAG-21-1670 | |
| DIANA CONSULTING SERVICES LLC, | * | | |
| Defendant | * | | |

\* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Compel Rule 35 Examination (the "Motion," ECF No. 37-1) filed by Diana Consulting & Services, LLC, d/b/a Servicon Facilities & Mechanical Services ("Defendant"). The Motion requests an order to compel the plaintiff, Jessica Rich ("Plaintiff"), to submit to a neuropsychological examination by Tracy Vannorsdall, Ph.D., a psychologist licensed in Maryland and board-certified in clinical neuropsychology. Plaintiff has submitted a memorandum in opposition to the Motion (ECF No. 37-2), and Defendant has submitted a reply (ECF No. 37-3). I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. (D. Md. 2021). For the reasons stated below, Defendant's Motion is GRANTED, but the neuropsychological examination will be restricted as described herein.

**I.     Background**

This case arises from a workplace accident on August 23, 2018 (hereinafter, the "incident"), wherein an employee of Defendant conducting repairs on the HVAC system at Plaintiff's workplace dropped a power drill that struck Plaintiff in the head. (ECF No. 1). After the incident, Plaintiff initiated a workers' compensation claim. (ECF 37-2 at 2). In the workers'

compensation case, Plaintiff was examined by Scott T. Winget, Psy.D., a psychologist with whom she consulted in May and June 2019. Dr. Winget conducted a psychological evaluation of Plaintiff, including a battery of neuropsychological tests. (ECF No. 37-1 at 45-53). Dr. Winget's evaluation of Plaintiff resulted in diagnoses of major neurocognitive disorder due to traumatic brain injury without behavioral disturbance; and major depressive disorder, single episode, moderate severity with mild anxious distress. (ECF No. 37-1 at 51). The workers' compensation carrier had Plaintiff evaluated by a psychiatrist, Stephen W. Siebert, M.D., in June 2019, and a neurologist, Margit L. Bleecker, M.D., in September 2019. (ECF 37-2 at 2). Dr. Siebert's diagnoses included unspecified anxiety disorder and somatic symptom disorder, ruling out mild neurocognitive disorder due to traumatic brain injury, and major neurocognitive disorder due to another medical condition, without behavioral disturbance. (ECF 37-1 at 100). Dr. Bleecker did not agree with Plaintiff's prior diagnosis of mild neurocognitive disorder due to traumatic brain injury and agreed with Dr. Siebert's diagnosis of somatic symptom disorder. (ECF 37-1 at 111–112).

On July 7, 2021, Plaintiff commenced this civil action against Defendant asserting negligence.[1] Plaintiff alleged in the Complaint that, as a result of Defendant's negligent acts in connection with the incident, Plaintiff sustained "significant and permanent injury, including, but not limited to, concussion, traumatic brain injury, chronic headaches, and post-concussion syndrome." (ECF No. 1 at 5). Additionally, Plaintiff alleged that she "has experienced, and will continue to experience, physical and mental pain and suffering." (*Id.*) Finally, Plaintiff alleged that she "has incurred, and will continue to incur, medical expenses, rehabilitation expenses, psychotherapy, and other related costs" as well as "wage loss and other economic losses." (*Id.*)

---

[1] Claims against defendants the RMR Group, Inc., the RMR Group, LLC, and RMR Mortgage Trust have been voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (ECF Nos. 17, 36).

2

Discovery is ongoing in this case. In the course of discovery, Plaintiff has expressly set aside any claims for traumatic brain injury and neurocognitive disorder. On December 6, 2021, Plaintiff amended her answer to an interrogatory calling for "the nature of all bodily injuries and/or mental conditions suffered by [Plaintiff] as a result of this incident" to include several chronic conditions and mental disorders. The chronic conditions listed in the amended answer included, among other injuries, "persistent posttraumatic headaches with migraine features, with accompanying posttraumatic vertigo, nausea, photophobia, and phonophobia;" and the mental disorders included depression, anxiety, and posttraumatic stress disorder ("PTSD"). There was no mention of traumatic brain injury or neurocognitive disorder. (ECF 37-2 at 15). On December 21, 2021, Plaintiff served a Rule 26(a)(2) Statement identifying a list of medical experts to be called as witnesses at trial whose opinions will include, but not be limited to, the following:

    (a) "Plaintiff sustained a concussion, post-concussion syndrome, chronic posttraumatic cervical strain, chronic persistent posttraumatic headaches, chronic posttraumatic vertigo, depression, adjustment disorder, and post-traumatic stress disorder as a result of the incident";

    (b) "Plaintiff's injuries from the incident continue to this day and are permanent injuries";

    (c) "as a result of the chronic persistent posttraumatic headaches and chronic posttraumatic vertigo, Plaintiff is permanently disabled";

    (d) Plaintiff has received and will continue to require various forms of treatment, including psychotherapy, as a result of the incident;

    (e) "Plaintiff's medical bills are reasonable, necessary, and related to the incident"; and

    (f) "the incident was the proximate cause of Plaintiff's injuries and resulting treatment summarized above."

(ECF 37-2 at 18–19).

Among other medical experts, Plaintiff has designated Michael E. Batipps, M.D., a neurologist whose three Neurological Consultation Reports, dated between July 2020 and November 2021, were produced by Plaintiff in discovery. (ECF No. 37-1 at 38–44, 54–58, 59–61). The first and second of these reports each summarize findings from neuropsychological evaluations of Plaintiff conducted in 2019, including Dr. Winget's diagnosis of major neurocognitive disorder due to traumatic brain injury, and note traumatic brain injury with posttraumatic neurocognitive dysfunction among several diagnostic impressions, including chronic headaches, vertigo, and cervical strain. (*Id.* at 40, 42, 56, 57). In his second report, dated January 19, 2021, Dr. Batipps commented that, although there was "evidence of a chronic traumatic brain injury" based on prior neuropsychological testing, Plaintiff's "physical dysfunction with very persistent severe posttraumatic migraine headache, persistent occipitocervical pain, [and] ongoing chronic frequent episode of vertigo with associated nausea" is enough to "prevent her from performing adequately on jobs requiring good mental focus and sustained attention." (ECF No. 37-1 at 57–58). Dr. Batipps stated, even without a diagnosis of traumatic brain injury causing neurocognitive dysfunction, this patient still would be unable to perform administrative and intellectual tasks up to her abilities." (*Id.* at 58). In his third report, dated November 16, 2021, Dr. Batipps opined that Plaintiff "is disabled due to post traumatic headaches and also because of prominent frequent vertigo with nausea." (*Id.* at 61). The third report still noted a diagnostic impression for chronic TBI with posttraumatic neurocognitive dysfunction but made no mention of prior neuropsychological evaluations. (*Id.* at 60-61). Plaintiff states that Dr. Batipps will not rely on any findings of TBI or neurocognitive disorder from the 2019 neuropsychological testing. (ECF No. 37-2 at 8).

Plaintiff designated Joseph T. Crouse, Ph.D., as an expert in the fields of vocational rehabilitation and economics and produced Dr. Crouse's report dated February 11, 2011, in discovery. (ECF 37-1 at 4). Dr. Crouse opined that due to "chronic disabling headaches and other functional limitations significant" to her vocational future, Plaintiff "is 100% occupationally disabled from substantial, gainful employment." (ECF 37-1 at 64–66). Dr. Crouse's report includes an excerpt from Dr. Batipps's January 19, 2021, report discussing the impact of Plaintiff's physical symptoms on her ability to work, setting aside any traumatic brain injury or neurocognitive disorder. (*Id.* at 64-66).

On March 4, 2022, counsel for Defendant requested to schedule Rule 35 examinations by a neurologist, a vocational expert, and a neuropsychologist. Plaintiff's counsel agreed to examinations by Defendant's neurologist and vocational expert but did not agree to an examination by the neuropsychologist.

Defendant served the Motion on March 10, 2022, requesting an order to compel Plaintiff to submit to a neuropsychological examination under Rule 35 of the Federal Rules of Civil Procedure. (ECF No. 37-1). Plaintiff then served an opposition, and Defendant a reply. (ECF Nos. 37-2, 37-3). In the Motion, Defendant requests "a comprehensive neuropsychological examination of Plaintiff, including an interview, an assessment of her cognitive functioning and emotional status, and neurocognitive testing." (ECF No. 37-1 at 2). In opposition, Plaintiff argues that "the condition for which Defendant seeks a neuropsychological examination is not in controversy and good cause does not exist" to compel the examination. (ECF No. 37-2 at 1). In reply, Defendant argues that, beyond assessing Plaintiff for traumatic brain injury or cognitive deficits, neuropsychological examination "can reveal whether an individual is likely to be amplifying subjective neurological symptoms" and whether these subjective complaints "are related to a

psychological condition[,]" and "provide the basis for the diagnoses of malingering and somatization disorder." (ECF No. 37-3 at 2-3). Each party has attached as an exhibit a written statement from a licensed psychologist specializing in neuropsychology, which present divergent views on the argument made in Defendant's reply. (ECF No. 37-2 at 41-43; ECF No. 37-3 at 6-7). The Motion and subsequent briefing were filed with the Court on April 11, 2022. (ECF No. 37).

## II.     Legal Standard

Rule 35 of the Federal Rules of Civil Procedure provides that the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). An order compelling a Rule 35 examination is permitted "only on motion for good cause and on notice to all parties and the person to be examined[.]" Fed. R. Civ. P. 35(a)(2)(A).

Like all discovery rules, Rule 35 is "to be accorded a broad and liberal treatment . . . [in order] to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15 (1964) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) (internal quotation marks omitted). But given the potentially serious invasion of privacy called for by a mental or physical examination, Rule 35 includes express limitations on compelling an individual to submit to such examinations for discovery purposes. *Id.* at 117 (citing *Guilford Nat. Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962)).

The party requesting an order to compel a Rule 35 examination must demonstrate that (1) the physical or mental condition of the person to be examined is genuinely in controversy and (2) there is good cause to order the particular examination requested. *Id.* at 118. The requisite showing

may be made by various means, such as affidavits, deposition testimony, records and information produced in discovery, and the pleadings. *See Bowen v. Parking Auth. of City of Camden*, 214 F.R.D. 188, 192 (D.N.J. 2003) ("The plaintiff can place his or her mental or physical condition in controversy through representations made during the course of the litigation."); *Thiessen v. General Elec. Capital Corp.*, 178 F.R.D. 568 (D. Kan. 1998) (plaintiff's deposition testimony identifying specific injuries he claimed were caused by defendant's alleged misconduct established that his mental condition was in controversy and afforded good cause for a mental examination); *Ali v. Wang Labs.*, 162 F.R.D. 165 (M.D. Fla. 1995) (plaintiff's answers to interrogatories placed mental condition in controversy and showed good cause for an examination). Whatever means are employed, the movant must produce sufficient non-conclusory information and evidence to permit the court to find a physical or mental condition in controversy and good cause for the requested examination. *Schlagenhauf*, 379 U.S. at 119. "[M]ere relevance to the case" will not satisfy the requirements of Rule 35. *Id.* at 118.

In cases where a mental or psychiatric examination is sought, the "in controversy" requirement may be satisfied when a plaintiff alleges "a specific mental or psychiatric injury or disorder[.]" *Ricks v. Abbott Labs.*, 198 F.R.D. 647, 649 (D. Md. 2001) (quoting *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998)). In a negligence action, "[a] plaintiff . . . who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. 104, 119.

The assessment of good cause for a particular examination "is intensely fact–specific[,]" 8B Charles A. Wright, *et al.*, Federal Practice and Procedure § 2234.1 (3d ed.), and "varies from case to case," *Storms v. Lowe's Home Centers, Inc.*, 211 F.R.D. 296, 298 (W.D. Va. 2002). Good

cause has been found when an examination is needed to defend against the claim of an opposing party and "[w]here the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries[.]" *Jones v. Campbell Univ., Inc.*, No. 5:20-CV-29-BO, 2020 WL 4451173, at *4 (E.D.N.C. Aug. 3, 2020) (internal quotation marks and citations omitted).

## III. Analysis

Defendant has shown that Plaintiff's mental and physical condition is genuinely in controversy and there is good cause to conduct a neuropsychological examination of Plaintiff.

### A. *Condition in Controversy*

In the Complaint, Plaintiff alleged that various acts of negligence by Defendant resulted in a power drill, a heavy metal object, being dropped on Plaintiff's head on August 23, 2018, causing specifically described injuries, including traumatic brain injury, chronic headaches, and post-concussion syndrome, as well as non-specific pain and suffering. Since filing the Complaint, Plaintiff has abandoned her claim that she suffers from traumatic brain injury or any cognitive deficit as a result of the incident, but she has identified specific mental disorders caused by the incident, including depression, anxiety, PTSD, and adjustment disorder. She also maintains that her injuries include chronic post-concussion symptoms and persistent headaches, which Plaintiff has described as specifically involving migraine features, posttraumatic vertigo, nausea, photophobia, and phonophobia. Plaintiff intends to present testimony from several medical experts in support of these and other injuries and a medical determination that the injuries are ongoing and permanent, result in permanent disability, render her unable to work, and will continue to require treatment, to include psychotherapy and neurological treatment. Plaintiff seeks damages on all of these grounds.

In response to the foregoing claims, Defendant has raised a dispute and is preparing a defense concerning the existence and cause of Plaintiff's subjective physical symptoms, including the migraine headaches, vertigo, nausea, photophobia, and phonophobia. Toward this end, Defendant seeks a professional assessment of whether Plaintiff has been exaggerating or amplifying her subjective complaints and whether the subjective complaints are caused by a mental disorder, such as somatization disorder or somatic symptom disorder or any of the mental disorders Plaintiff claims was caused by the incident.

The controversy over Plaintiff's claimed injuries and complaints is genuine. In 2019, following a psychiatric independent medical evaluation by Dr. Siebert and an independent neurological examination by Dr. Bleecker, both physicians diagnosed Plaintiff with somatic symptom disorder. (ECF No. 37-1 at 100, 112). Additionally, Dr. Bleecker administered the Test of Memory Malingering and concluded that Plaintiff was likely malingering memory complaints and not putting forth maximum effort during memory testing. (*Id.* at 110). Dr. Siebert reviewed the prior neuropsychological evaluation conducted by Dr. Winget in June 2019. (*Id.* at 100–01). In response, Dr. Siebert expressed concern that Dr. Winget "did not administer any tests sensitive to malingering" and recommended referral to a neuropsychologist "with significant experience assessing persistent cognitive and somatic symptoms following a mild concussion." (*Id.* at 101). Dr. Siebert recommended that the neuropsychological testing include "tests to show to what extent Ms. Rich is attempting to bias the outcome." (*Id.*)

I recognize that, in the instant litigation, Plaintiff is no longer pursuing claims for any neurocognitive dysfunction or memory deficits, but she is seeking relief for claimed injuries based on subjective complaints of head pain, vertigo, nausea, photophobia, and phonophobia. Dr. Siebert's and Dr. Bleecker's findings and recommendations are more than sufficient to show that

the controversy about whether Plaintiff is malingering her subjective complaints and suffering from somatization disorder is not fabricated. *See Ford v. Am. River Transp. Co.*, No. 5:11CV-00094-R, 2012 WL 4049467, at *3 (W.D. Ky. Sept. 13, 2012) (finding that plaintiff's mental condition was "in controversy" where "treating physicians indicated that he may suffer from a mental condition that causes him to experience symptoms out of proportion to his physical injury" and plaintiff's expert opined that totality of plaintiff's impairments rendered him unfit for employment). Defendant is entitled to explore these issues in preparing a defense.

    B. *Good Cause*

The fact that Plaintiff's mental and physical condition are in controversy does not settle the question of whether there is good cause for the examination requested by Defendant. The parties have each submitted a written statement from a licensed psychologist with considerable education and experience in the field of neuropsychology and neuropsychological testing. The affidavits leave differing impressions about the proper scope and subject matter of neuropsychological testing as applied to this case.

Plaintiff's declarant is David Hebda, Ph.D., a licensed clinical psychologist with a specialty in neuropsychology. Dr. Hebda states that neuropsychological examination "does not confirm or deny whether an individual is experiencing headaches[,]" "chronic persistent migraine headaches[,]" "nausea or vertigo[,]" "photophobia or phonophobia[,]" or "whether an individual is a malingerer" or "has somatization disorder." (ECF No. 37-2 at 42).

Defendant's affiant is Tracy Vannorsdall, Ph.D., a psychologist licensed in Maryland and board-certified in clinical neuropsychology, and the same psychologist whom Defendant proposes conduct the proposed examination of Plaintiff. Dr. Vannorsdall states that "[n]europsychological examinations and testing can reveal whether an individual is likely to be amplifying subjective

neurological symptoms, such as headaches, migraine headaches, nausea, vertigo, photophobia, and phonophobia." (ECF No. 37-3 at 6). According to Dr. Vannorsdall, specific neuropsychological tests can "identify whether an individual is purposefully underperforming or exaggerating symptoms to appear more neurologically injured than they really are." (*Id.* at 6–7). This statement is consistent with Dr. Siebert's recommendation in 2019 that neuropsychological testing of Plaintiff include tests to determine the extent to which Plaintiff attempts to bias the outcome. (ECF No. 37-1 at 101). Dr. Vannorsdall states further that neuropsychological testing "can reveal whether a[n] individual's subjective neurological complaints, such as headaches, migraine headaches, nausea, vertigo, photophobia, and phonophobia, are related to a psychological condition." (ECF No. 37-3 at 7). Thus, according to Dr. Vannorsdall, neuropsychological testing "can provide the basis for a diagnosis of malingering" or a "diagnosis of somatization disorder." (*Id.*)

Dr. Vannorsdall's affidavit makes clear that neuropsychological examination is an appropriate means by which Defendant may acquire evidence to support a contention that Plaintiff's ongoing injuries and subjective complaints in this case are exaggerated or have a psychological cause. I find, therefore, that good cause exists for a neuropsychological examination of Plaintiff. *See Glennon v. Performance Food Grp., Inc.*, No. 2:20-CV-38, 2021 WL 3130050, at *3 (S.D. Ga. July 23, 2021) (granting motion to compel neuropsychological examination under Rule 35 "to address causation and possible malingering of symptoms"); *Hairston v. Ed Nelson Transp.*, No. 3:13-CV-1457-J-32JBT, 2014 WL 12621228, at *1–*2 (M.D. Fla. Aug. 7, 2014) (granting Rule 35 motion to compel neuropsychological examination to determine extent to which mental conditions referenced in plaintiff's medical records affect physical symptoms for which he seeks damages).

Even if, as Dr. Hebda states, neuropsychological examination cannot by itself "confirm or deny" Plaintiff's subjective complaints, whether she is malingering, or whether her subjective complaints are owed to a psychological disorder, neuropsychological examination can "provide a basis for" diagnosing malingering and somatization disorder, according to Dr. Vannorsdall. Such information would be relevant to Plaintiff's claims and could prove critical to the defense against them. Clearly, a professional examination is necessary to explore whether Plaintiff's claimed injuries are exaggerated or caused by a psychological condition because "the average lay person would have difficulty evaluating the nature, extent, and cause" of these injuries without such an examination. *Jones*, 2020 WL 4451173, at *4. Dr. Vannorsdall's *curriculum vitae* confirms her qualification to conduct a neuropsychological examination of Plaintiff. (ECF No. 37-1 at 17–27).

In her opposition to the Motion, Plaintiff suggests that an expert would be prohibited from testifying about any neuropsychological evidence of malingering because such testimony would go to Plaintiff's credibility. (ECF No. 37-2 at 10). Plaintiff may, of course, later seek to exclude expert testimony based on the neuropsychological evaluation; that issue cannot be decided today. I have noted the two cases cited by Plaintiff where expert testimony on malingering, symptom magnification, and somatoform disorder were excluded from evidence in advance of trial. *See Wagoner v. Lewis Gale Med. Ctr., LLC*, No. 7:15-CV-00570, 2016 WL 7183162, at *6 (W.D. Va. Dec. 8, 2016); *Kidd v. Wal-Mart Stores, Inc.*, No. CIV.A. 3:09CV264, 2009 WL 3805584, at *3 (E.D. Va. Nov. 12, 2009). But such testimony has been permitted in other cases, even if in restricted form. *See, e.g.*, *Conway v. Celebrity Cruises, Inc.*, No. 19-24470-CIV, 2022 WL 1202874, at *3 (S.D. Fla. Apr. 22, 2022) (denying motion to exclude expert testimony "regarding secondary gain, symptom magnification, somatoform disorder, and malingering" in advance of trial without binding authority or sufficient contextual information); *Gould v. Union Pac. R.R. Co.*,

No. 19-CV-02326-PAB-NRN, 2021 WL 4428286, at *9 (D. Colo. Sept. 27, 2021) (permitting expert testimony regarding results of neuropsychological testing "suggestive of symptom exaggeration" and "explained by malingering"); *Courts v. Wiggins*, Civ. No. 5:16cv00054, 2018 WL 10609717, at *3 (W.D. Va. Feb. 1, 2018) (prohibiting testimony that "plaintiff is faking, feigning, exaggerating or malingering" but permitting expert testimony based on psychological tests administered to plaintiff by licensed clinical neuropsychologist, including any "over-reporting of symptoms" that is evident from test data); *United States v. Sampson*, Crim. No. 01-10384-LTS, 2016 WL 11726919, at *10–*13 (denying motion in limine to exclude neuropsychologist's testimony regarding malingering). The question of admissibility or exclusion cannot be addressed until the proposed testimony is available for the parties' and the trial judge's consideration. *See McKitis v. Defazio*, 187 F.R.D. 225, 227–28 (D. Md. 1999) (any concerns about expert's opinion following Rule 35 examination can be addressed in a pretrial motion in limine).

    C.  *Limitation on the Neuropsychological Examination*

Although I have found good cause to conduct a neuropsychological examination to assess whether Plaintiff's headaches, nausea, vertigo, photophobia, and phonophobia are exaggerated or are caused by a psychological condition, that is the extent of my finding and therefore will be the extent of a Rule 35 order to compel neuropsychological examination. Notably, Defendant has requested neuropsychological examination with a potentially broader scope, to include assessment of Plaintiff's "cognitive functioning" and "neurocognitive testing." (ECF No. 37-1 at 2). Counsel for Plaintiff has stated unequivocally that Plaintiff is not asserting any claim for any cognitive deficit or dysfunction, traumatic brain injury, or neurocognitive disorder. (ECF No. 37-2 at 1, 3–

4, 25, 27–28).[2] Nor will any of Plaintiff's expert witnesses offer or rely on any finding of cognitive deficits or any prior diagnoses of traumatic brain injury or neurocognitive disorder. (*Id.* at 7–8, 27–28). Although the reports of Plaintiff's experts include reference to prior findings of neurocognitive deficits or disorders, they do not rely upon these findings in reaching their conclusions regarding Plaintiff's neurological condition and disability. (*See* ECF Nos. 37-1 at 57-58, 61, 65). Therefore, I do not find that Plaintiff's broader cognitive functioning is genuinely in controversy and cannot compel a neuropsychological examination to assess or explore cognitive functioning as a general matter under Rule 35. The scope of the examination will be restricted to testing or assessing whether Plaintiff's claimed injuries or complaints are exaggerated, amplified, or owed to malingering or a psychological condition, such as somatization disorder.

## IV.    Conclusion

For the forgoing reasons, the Motion is GRANTED. Plaintiff must submit to a neuropsychological examination by Tracy Vannorsdall, Ph.D. subject to any restriction noted in this memorandum. The parties are directed to confer and to file jointly a proposed order meeting the requirements of Fed. R. Civ. P. 35(a)(2)(B) **on or before May 12, 2022**. The proposed order shall specify the time, place, manner, conditions, and scope of the examination consistent with this Memorandum Opinion and Order.

| | |
|---|---|
| April 28, 2022 | /S/ |
| Date | Matthew J. Maddox |
| | United States Magistrate Judge |

---

[2] Defendant cites portions of Plaintiff's deposition testimony in which, according to Defendant, Plaintiff places her cognitive functioning at issue. (ECF No. 37-1 at 5). As indicated by Plaintiff in her opposition, the cited portions of testimony were in response to questions regarding difficulties Plaintiff experienced within three months of the incident. (ECF No. 37-2 at 6-7, 31-34). The cited portions of Plaintiff's deposition testimony do not place her current cognitive functioning at issue.